Case is Danganan v. Guardian Protection Services, appellate number 19-2545. Good morning. Good morning, counsel. You may proceed. Good morning, Your Honors. May it please the Court. My name is Michael Donovan and I represent Joby Danganan. I would like to reserve two minutes for rebuttal, Your Honor. You'll be granted. Thank you. Your Honors, there are two issues central to this case and then two subsidiary issues. The first is whether the district court erred in dismissing plaintiff's claim that the continued collection of a $45 monthly charge for a five-year security monitoring contract constitutes an unlawful contractual penalty under Pennsylvania law when the customer has moved out of the house and terminated the contract after 18 months. The second is whether the customer's payment of over four months of the contract after the termination of that monthly, of that contract, nearly $200 for the charges in response to the company's Dunning letters properly pleads a quote-unquote ascertainable loss under the Pennsylvania statute. Let's go to the first one. The collection as being a contractual penalty. I cannot find a case where that concept has even been proffered. The cases about contractual penalty are cases where there's an enforcement action based upon a provision in a contract that sets forth a damages or a liquidated damages provision and you can say, aha, that's a contractual penalty. Here, you're saying that the continued collection of the amounts due under the contract as provided for in the contract somehow is a penalty. I guess I'm asking what's your best case for that provision? My best case for that, Your Honor, and it's a good question, is the Pennsylvania Supreme Court cites in Pantuzzo is the Westmount Country Club case, which was a New Jersey Superior Court decision. I'll run through the facts of that a little bit. What happened there was somebody had subscribed to the... Is Pantuzzo in your brief? It is. Were you going to do the facts of Westmount? I'll give you the facts of Westmount. Because Westmount was acclaimed by the Westmount Country Club against a member and the member said, I don't want to participate in the club anymore, and Westmount said, but you still owe us money, and they bring a breach of contract claim. I think that's Judge Rendell's point is these cases that invoke the concept of contractual penalty all arise in the context of someone is alleging a breach of contract and the adverse party is saying, you've got to take into account the damages they want is an unlawful contractual penalty. That's why I don't understand where you're going with Westmount. I just don't see how it applies here. We have no breach of contract. And Westmount says a penalty is a sum the party agrees to pay in the event of a breach, which is fixed. It's a punishment, the threat of which is designed to prevent the breach. How does that, you know, there's a contract action, as Judge Ford's point out. How does that fit here? In both of those instances, you are looking at the non-breaching party bringing a breach of contract action against the breaching party. And the breaching party is contending that, well, you're attempting to collect a contract penalty from me. And that's what exactly happened here because the debt collection activity here is the precursor to the breach of contract action. But nobody breached the contract here. No, my client did breach the contract according to Guardian. My client terminated early. Guardian contends that you may not terminate early. If you do terminate early, that's a breach. And under paragraph 12 of the agreement, you must pay us all of the unexpired term plus our lost profits. But they didn't bring a cause of action to enforce that provision. Well, they brought a cause of action under two statutes. And how does this fit under the two statutory causes of action that you've brought? They brought a cause of action by dunning my client. That's not a cause of action. That's an act, but it's not a cause of action. It's a debt collection. Correct. Right. And so I think we're both focused on the claims in the case because we're in 12b6 land. We're boxed in by what the claims of the cases and the allegations are. And so I'm with Judge Renda. I'm trying to also see how this maps on to a claim under basically Pennsylvania's consumer protection laws where there's no assertion of deception, of misunderstanding, confusion. I'm having a difficult time seeing how this is a cause of action under that statute. The first statute that we brought the claim under is called the Fair Credit Extension Uniformity Act. That's basically the Fair Debt Collection Practices Act against creditors under Pennsylvania law. The way that act is enforced is it's enforced under the UTPCPL. That act applies to any attempts to collect charges that are inflated, penalties, overcharges, or mischarges. Identify which provision of the statute you are relying upon for that purpose. Because your complaint relies on, at least for the one that goes with deceptive because it's confusing or misleading. It relies on the catch-all because that's how the Fair Credit Extension Uniformity Act is enforced under the catch-all. But contractual penalty is apples and oranges to deceptive practices. It isn't, Your Honor, and here's why. If you attempt to collect an overcharge, an inflated charge, a increased charge, or a charge that's not even reflected in the contract, that's a debt collection if you attempt to do that. The Pennsylvania Supreme Court addressed this in the Enterprise case, the Grimes v. Enterprise case. There, Enterprise was attempting to collect what were alleged to be inflated damages charges. Right, but there is, as we said before, this is not a suit brought by Guardian. But Enterprise didn't bring a suit either, in that case. The claims there were FCEUA and UTPCPL claims. Well, let's, all right, let's. Did you, excuse me, just one second. Did you raise this issue before? How did, was it in your complaint? It was. In fact, it's pled directly. I can cite you to the appendix. This was the central claim in the complaint, Your Honor. Let me give you three appendix sites. I think the appendix 33, which is, it's supplemental appendix 16, which is the complaint, which says that this is a contract penalty, the attempt to collect this, which is very similar to the Grimes v. Benson v. Budget leasing case, Powis cases. All of those cases deal with the collection of what are alleged to be penalties. In addition, in our opposition to the motion to dismiss, which is supplemental appendix 475-476, 482, and 485-87, all of which we alleged that the attempt to collect the unexpired term plus lost profits, which is what's set forth in paragraph 12 of Guardian's contract, that's at PA, that's supplemental appendix 33. Those are classic contract penalties. And in fact, the Eastern District of Pennsylvania dealt with that in the Benson v. Budget rent-a-car case. There again, it's an attempt by Dunning letter to collect excessive damages. Tell me which provision under the Fair Credit Extension Act case, which provision are you relying on? We're relying on the collection of any amount, including any interest fee, charge, or expense, unless such amount is expressly authorized by the agreement creating the debt or permitted by law. It was not authorized? Say again? It was not authorized? It is authorized, but under this Court's decision in Polis, which is controlling, what this Court did was a three-part test in Polis, and it adopted the Second Circuit standard there. And what the Court said was that you can collect either a charge that is permitted expressly by state law, a charge that isn't mentioned by state law but is permitted by state law, even if the charge is set forth in the contract. But the condition precedent for contractual penalty to be improper is the fact that it's being sought in connection with a breach of contract. Here, you have a circumstance, I'll just, I will, I promise I'll let you finish. Sorry, I should let you finish, I apologize. That's all right. Here, we have a situation where we have a contract that permits unilateral termination of an agreement by Guardian. They set forth a bunch of reasons why they can terminate. We have your allegations and the complaints, your client canceled the contract. But none of that absolved his obligation to continue to pay. That was his obligation under the contract. So why is that not permissible under the law as alleged in this case? Because, again, there's no breach of contract cause of action where contractual penalty pops up as sort of a mitigation or a method by which to reduce damages. No, that's exactly right. There isn't a breach by Guardian. There's a breach by us, by my client, because he terminated early and Guardian says you can't terminate early. And the rule is, and this is set forth in Pantuzzo, Westmount, that, end of his statement, the rule is that one cannot profit off of the other party's default. That's what is set forth in Pantuzzo. But both of those are, again, are contract actions. And it's a fixed penalty as a punishment to prevent breach. Is that what this is? There is a fixed penalty here, Your Honor. It's the unexpired term including the profit. That's $1,887. So any time somebody stops performing under a contract and the other contracting party sues to enforce the terms of the contract, that is the fact that you agreed to pay the full amount for the term of the contract, that's a contractual penalty? It is, and that's the Westmount case and that's the Pantuzzo case. If in response to, for example... Well, but, okay, but let's say how you fulfill the statutory provisions. I'm at SA-23 and you're talking about a misleading and deceptive act. You agree that in order to have a clause of action, you need a deceptive act and justifiable reliance on that act. Where have you alleged any justifiable reliance upon a deception? The deception is billing for the full unexpired term of the contract. How is that deceiving? It's right there. I'm billing you. You owe it. How is that deceptive? Are you saying you didn't know that that was in the contract, that the term was five years and you had to pay the whole amount? No. What is deceptive about it is representing that that is a lawful post-termination charge to collect both profit and the unexpired term when, in fact, state law prohibits imposing the full charge for an early termination. State law expressly says if you can't collect the entire amount, including all of your profit, when you're not providing any service, you're not incurring any expense, you can't collect the entire amount of the unexpired term, including profit. Is it your position that you've pled unconscionability, if you will, of this contract? It is true that there's a lot of small print. I mean, I couldn't even read a lot of the contract. And the whole, the fact that, you know, there's absolutely no cancellation allowed under, you know, for a contracting party is not clear on the face of the contract. But I haven't seen where you've really pled unconscionability as a cause of action for to... In fact, I didn't argue. I didn't see any argument on your part either in terms of that sort of effort to sometimes defeat obligations under a contract. That's right. What Guardian is doing is enforcing the precise provisions of the contract. And what we're saying is that the Paragraph 12 early term, the Paragraph 12 prohibiting termination and requiring full payment of the unexpired term, plus lost profits... But they also said during that term, you can continue with this property. You could have, your buyer could have taken on the outlay, or you could have it at your new house. So it really isn't a penalty. It's you, they would continue to provide you the services during those five, that entire five-year term, correct? Right. But in this instance, that service couldn't be provided in San Francisco, not the least of which because his new property was a high-rise property to which Guardian... They failed to perform on that aspect. Well, it wasn't even a question of performing. They couldn't perform. They weren't providing the service out in San Francisco at his new high-rise building. So it wasn't even an option. It couldn't have been an option at all, and it didn't come up until after he had already terminated. But the point, Your Honors, is even had this contract come and said, look, you pay us $20,000 if you terminate early, that would have been very clear and it would have been set forth in the contract. That also would have been a penalty. Here, you can calculate the unexpired term plus the profit that they would have earned on it, $1,887. That's a fixed penalty that's provided when they're not providing any service. That isn't on the contract. But then the bill would have to be a deceptive act. It was. How is the submission of five bills every month a deceptive act? Each of the bills is deceptive because they're attempting and representing to collect a charge that is not permitted by state law, and that's the Polis decision. And the fact that he paid that charge is the reliance and causation. And the Pennsylvania Supreme Court dealt with that expressly in the Grimes decision. In Grimes, what the court said was if the plaintiff had, quote, paid anything towards the outstanding bill, and this is Enterprise trying to collect damages, and they didn't bring a case until he counterclaimed, but if the plaintiff had paid anything towards the outstanding bill, then he would have pleaded an ascertainable, quote, loss of money or property due to Enterprise's alleged UTP-CPL violations. Here we paid four bills, or what amounts to the total of four bills, almost $200. And that's set forth in 105A3 at 1193. So that aspect is dealt with and addresses Hunt, as well as the M. Ray Smith decision that we also signed. We'll have you back up on the line. Very good. Thank you, Your Honor. Oh, excuse me. Oh, I'm sorry. Oh, I'm sorry. No, one question. Was the contract term three years or five years? That's a good question, Your Honor. The district court deals with it in a way that it was five years. There are two inconsistent provisions. There's a provision in subpart B that says the initial term will be three years. The district court treats, I think it's subpart A, as this is a five-year term. I don't think it really makes much of a difference except for the fact that we're not clear as to how many months Guardian was going to continue to bill my client for. Did he due money back if it was three years or not? No, he was only there 18 months, Your Honor. And in fact, they said, well, you pay the full. But how much did he pay? He had paid for the 18 months that he was there, and then he paid four additional months. Four. Yes. He paid, well, what it amounted to, but there were late fees and everything. He paid about $200 more. So, but it's unclear. They were asking to resolve the whole thing for $535. I think that's in paragraph 12. Are there other suits that have been instituted against Guardian? I don't know if there are. Did you say there are class members, there are other people who have complained? Are the complaints of the same nature? Yes, all of them. There's an online complaint board where hundreds of people. But there's been no other, there's no other lawsuit? I'm not aware of any, but that doesn't mean I did a complete survey, Your Honor. We'll ask Guardian, because they might know. Very good. Any other questions? Thank you. We'll see you in a little bit. Good morning. May it please the Court, my name is Laura Venzoulis, and I'm here on behalf of Guardian Protection Services. I think one thing I need to say right from the start is this case has been going on for four and a half years. I know. Since June of 2015, we have briefed this up and down this circuit, the Pennsylvania Supreme Court. Never once has Mr. Danganon tried to amend his complaint to assert a breach of contract claim. I thought he wanted to amend his complaint, but it was denied. No, the motion to dismiss both times were dismissed with prejudice. However, he's never sought an amendment to the complaint, ever, to this day. Well, the district court addressed amendment and thought it would be futile. Based on the allegations of the complaint, yes. Because the problem is, and of course this panel has hit it right on the head, is he's brought a UTPCPL claim. Not a breach of contract claim, not a quasi-contract claim, not an FDCPA claim. But some of his allegations talk about the fact that it's misleading because these provisions are hidden. You can't really see. I mean, I would look at the contract and I would have no way of knowing that it's totally not cancelable. You know, it's just not, you leave the property and all of a sudden you're supposed to continue paying for the service you're not getting for five years? That sounds a little bit, where is that stated in the contract that you, under no circumstances can you cancel? Paragraph 12. The last. The last sentence. The last sentence of paragraph 12. Oh, my goodness gracious. And also in the initial term of the cover agreement also says the initial term is for five years. But it doesn't say it's not cancelable. I think it's a little misleading to say it's not. Actually, I can't even read it. Cancelable. It's so small. Is the language your obligations under this agreement continue even if you sell or leave the premises? Correct. And the proceeding part of it talks about all the termination rights of the guardian? Correct. So is it a unilateral termination right in this? Is that how this contract worked? I think there are circumstances that guardian can, it looked like there was some provision for an act of God or something where they couldn't provide the services. There was some kind of interference. Meaning, my question is that only guardian could terminate the contract. A consumer could cancel the services. I don't want your services anymore. But the obligations would continue. Only guardian could terminate as this language is written. Is that correct? Correct. And as far as I know, and there's no case law cited to indicate that that is in any way unlawful in any way. What if the contract was a 20-year contract instead of three or five years? And our consumer paid for 18 months and then left? Would it be permissible under the law to allow the guardian entity to continue to collect for 20 years? I think that that consumer would have a cause of action. I just don't think it's a UTCPL plan. There's no deceptive conduct. There's absence of deception. I mean, there's no justifiable, he's never pled justifiable reliance on deceptive conduct by guardian. He's had numerous opportunities to change his theories lots of times, but he has never changed his cause of action. And isn't it true that if I read the materials in front of us correctly, he's also never argued that the contract is problematic because of the size of the font or the placement of the language, never made any of those arguments, at least in front of us, correct? Before us, that is not an argument being made, am I right? No, he made it to the district court of appeals. I'm asking about the court of appeals. Not that I know of, Your Honor. And there's no ascertainable loss whatsoever from any of those provisions that he claimed in the lower court were problematic. Now, what other claims are out there? He says there are other claims. There's an online complaint board. Have there been other claims filed against you? Not to my knowledge, there have not been claims like this case. No, but any other claims that is unlawful or unconscionable? Not to my knowledge, Your Honor. Not to my knowledge, no. Is this still the contract you use? Still. Have you changed the form of contract? I think they have changed it. Not that that's evidence, because it wouldn't be. I'm just curious. Right, right. No, I think they are trying to format the contract differently. How do you respond to your adversary's contention that the amounts being collected were not authorized by law? That's his link to the Fair Credit, the Fair Extension Credit Act. Yes, Mr. Donovan keeps saying it's in violation of state law, and that's the police case. Police case, they just, the trial court dismissed the UTPCBL claim. That's not a UTPCBL claim at all in that case. I don't know what state law he's referring to, but I am not aware of, and he has not cited any cases that indicate that this is somehow unlawful. I can give you a practical example. I have a teenage son, okay? He has a phone. He loses it and breaks it regularly. And yet, when I enter into a contract with Verizon or whomever and say I'm going to pay $10 or $20 a month for that extra line, if he breaks his phone and I decide I'm not going to buy him another phone, I still have to honor my obligations for whatever term it was that I agreed to. And I know of nothing that says a three-year or a five-year term is per se unconscionable. And by the way, we have a very sophisticated person here, and this person was not misled. He doesn't even claim he was misled. He does not even, he does not say that he didn't understand the contract language. He just says per se this is an illegal contract and cites no authority to support that. Have you found any case law authority that says this contractual penalty, as he describes it, I know you would disagree that you would presumably say it's not a contractual penalty, but this ongoing payment obligation violates either the Consumer Protection Law or the Fair Credit Act under Pennsylvania state law. I am unaware of any authority. And by the way, the facts alleged in the complaint don't support it either because he stopped paying. There are no allegations of payment after a certain time frame. We didn't sue him for breach of contract. We didn't sue him in the collections case. All this talk about $1,800 or whatever the amount was, that was never collected. It was $200. That was what was collected. So you got four months, and then you decided just to let it go, basically. Well, we were sued. I mean, I don't think they continued their collection efforts after they were sued. In a nationwide class action case, we were sued, yes. Did you counterclaim for the rest of the money? No, but there's a little touchiness with counterclaiming, especially in federal court. I handled this issue. You can do it for some reason in state court. I can't remember exactly what the nuance is. But also, you've never filed an answer, right? No. So we don't have any counterclaims, right? No. Correct. And we have discussed it as an offset or something to that effect. I really think this case turns on justifiable reliance, and justifiable reliance on the deceptive conduct of Guardian. We don't even have an allegation that he was deceived. But what's interesting, I recognize you're focusing on the consumer protection law avenue. Your adversary stood up here and said his main claim is actually the collection activity, which isn't in the sequence of his complaint. His complaint does consumer fraud, and then the second. So I hear you're focused on that point. How do you respond to your adversary's contention that the collection activity of collecting that ongoing obligation to pay for a service not being provided does not violate the collection act of the state? The FDCPA is a different story, because that only applies to debt collectors.  Right. I know of no case law that would support the idea that continuing to collect under the clear and explicit language in a contract that isn't misleading and deceptive is in any way in violation of any consumer protection law. And therefore, you can continue to collect those payments because they're lawfully owed to you under a contract. That's our position, yes, it is. Thank you. Do you have anything else? No. Thank you very much. Mr. Donovan, the district court determined that any amendment would be futile here and declined to permit amendment. I'm not sure if you sought it or not. You've not appealed that aspect. You have no desire to amend your complaint. Is that correct? Not in a substantive way, Your Honor. That's the only way you can do it. Right. And let me explain what I mean. Perhaps we should have reversed the count pleading, because that seems to have confused the issue. The issue here always was that it's the attempt to collect an unlawful charge, the follow-on after he terminates, of billing him and collecting those amounts. That violates the – That's your theory. You have no desire to plead a breach of contract unconscionability theory. Is that correct? Not entirely. Well, you haven't asked to amend. You haven't appealed. Let me explain what I mean by that. The FCEUA covers unconscionability. The attempt to – Based upon deception and misleading. Based upon an unconscionable charge. Based upon deception and misleading. Correct? Well, you plead. You say prohibits creditors from using false, deceptive, misleading, or unfair or unconscionable means. Correct. To collect. That's correct. But not an unfair and unconscionable provision in a contract because it's hidden, et cetera, et cetera. Yes. Yes. I agree with you. Yes. You have no desire to plead that. We're on the same page there. Yes. Okay. All right. Yes. We are – Strictly the collection activity. And that applies to count one as well, Your Honors. Okay. Okay. So it wasn't – perhaps it wasn't clear in the complaint, but count one is the way you enforce count two. And doesn't that – let's talk about that. We have a case called KMARC. Yes. Bank of America. And that's – that basically goes if a plaintiff can't set forth a UPCPL claim, can't state a claim under the FCEUA when they're based on the same acts. I didn't understand what you just said. What I'm saying is that we have a precedent in KMARC. Yes, I know. And KMARC suggests – it doesn't suggest, it holds that if you can't set forth the UPCPL claim, then you can't state an FCEUA claim. That's right. That goes to ascertainable loss. That's the point, is you have – It goes to the ascertainable loss. It goes to the – I mean, it's a proposition of law that's not just to that one element, but to the crux of the deceptive activity. I think the crux of the decision there was if you have to have paid something that was based upon a false, misstated, or overcharged bill. So that would be your FCEU claim. If you didn't pay anything at all, then you wouldn't have satisfied that element and you wouldn't have a UTPCPL claim. That's KMARC. All right? That's also Grimes. That's the Pennsylvania Supreme Court's decision in Grimes v. Enterprise Leasing. And there, again, you have a rental company attempting to collect an uninflated charge that's alleged to have been an improper, unauthorized charge under state law because it's inflated. They brought an FCEU claim and a UTPCPL claim. And there the Supreme Court addressed whether it was an ascertainable loss by just hiring defense counsel. And they said, attorney's fees aren't. You have to have paid money towards the bill. My client paid money towards the bill. He relied on the bills in paying the money. That's the reliance here. So the question then is, are these bills, in fact, an unfair or deceptive practice? And we have demonstrated through the Powis decision, the Benson v. Budget Rent-a-Car decision, even the Grimes decision, that the attempt to collect a charge that's not permitted by state law because it's a contract penalty is unfair, unconscionable, and deceptive. It's the bills that are deceptive. We didn't challenge the contract. Is that the basis to your request for certification to the Pennsylvania Supreme Court? The reliance issue is, Your Honor. That's basically because. Post-contract. Yeah. And let me explain. Because this court has very emphatic language and hunt about reliance. I acknowledge that. The difference here is that this court also addressed the causation requirement in Ray Smith. And the Pennsylvania Supreme Court hinted at it in Grimes. And there, both courts treat post-contract payments or deception as different from fraud in the inducement, which was toy. And that's permissible. If there is post-contract deceptive conduct, then that can be the basis for cause of action. You have trouble with whether it's deceptive. Exactly. Our issue here is, was the attempt to collect deceptive conduct. And, Your Honors, all I can do is point out that the Benson v. Budget case, which is an attempt to collect an inflated damage bill, same thing with Enterprise, same thing with other attempts to collect continuing charges, including lost profit. That's the key thing. Because that very language is used in the Benson v. Budget case. And there the court denied summary judgment, saying that that could be an unfair charge. Because you can't collect. The rule of law is that one may not profit from another party's deceit. Hence, if you're collecting profit, that's an unfair contract penalty because you're not providing any service anymore. So for those reasons, we believe the district court should be reversed. Thank you, Your Honors. Thank you very much for your well-argued case, Douglas Counsel.